UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Ray WILLIAMS,
Defendant–Appellant.

No. 94–30008.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1994.

Decided Nov. 29, 1994.

Thomas W. Hillier, II, Federal Public Defender, Seattle, WA, for defendant-appellant.

Nina Swift Goodman, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: LAY,* TROTT and T.G. NELSON, Circuit Judges.

LAY, Circuit Judge:

Michael Ray Williams appeals from the district court's sentence of 108 months rendered after his plea of guilty to manufacturing and storing explosives without a license, 18 U.S.C. § 842(a)(1) and § 842(j), and possession of a firearm by a felon, 18 U.S.C. § 922(g). He originally was sentenced to 120 months in prison to be followed by three years of supervised release. Williams appealed, and on concession of error by the government, this court vacated his sentence and remanded to the district court for resentencing on July 8, 1993. On resentencing the district court adopted the probation department's recommendation and sentenced Williams to 108 months in custody to be followed by three years of supervised release.

On appeal, the defendant argues the court committed several errors in sentencing him. He claims the district court (1) failed to comply with Fed.R.Crim.P. 32(c)(3)(D) because it did not make findings on fact on disputed matters; (2) failed to provide him an evidentiary hearing on resentencing; (3) failed to properly identify facts justifying an upward departure by eleven levels; and (4) increased the upward departure over the earlier sentence thereby violating due process. We vacate the sentence and remand the case for resentencing.

## BACKGROUND

On May 4, 1992, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") observed the controlled delivery of chemicals used in the making of fireworks to the defendant's residence in Bremerton, Washington. Thereafter, the agents executed a search warrant and found 240 pounds of completed fireworks and 365 pounds of chemicals used for making fireworks as well as several firearms. Some of the chemicals were still packaged in their original manufacturing wrapping. The agents, according to the presentencing report ("PSR"), contacted police officials on the Suquamish Indian Reservation who reported that Williams was selling fireworks to members of the tribe for resale at their fireworks stands.

After Williams was arrested at his home, the chemicals found there were sorted and inventoried by ATF agents and transported by van to Fort Lewis. On May 6, 1992, in the process of preparing to destroy the chemicals at a demolition site at the fort, Agent John Massengale was fatally injured when the chemicals spontaneously ignited and exploded.

In the original sentencing proceeding, the court followed the government's recommendation and erroneously took into account Agent Massengale's death, cross referencing under section 2K1.3(c)(1)(B) to the second-degree murder guideline and sentencing the defendant to 120 months imprisonment.[1]

On appeal, the government conceded error and the case was returned to the district

---

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. Effective November 1, 1992, the commentary to Section 2K1.3 was amended to provide that "[a]s used in subsection[] (c)(1), ... 'another offense' refer(s) to offenses other than explosives or firearms possession or trafficking offenses." U.S.S.G. § 2K1.3, comment. (n. 11); U.S.S.G. App. C., amendment 471. Because Williams' sentencing took place on November 20, 1992, the district court should have applied the amended commentary. *See* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

court for resentencing. The PSR was resubmitted without amendment. Both the government and the defendant filed sentencing memoranda with the court. The defendant had several objections to the PSR and submitted a number of affidavits challenging the accuracy of the factual statements in the PSR. The probation department gave a new sentence recommendation, calculating the offense level to be eighteen with a presumptive sentencing range of twenty-seven to thirty-three months.[2] However, the probation department renewed its original alternative recommendation of 108 months imprisonment. The PSR raised its recommendation for departure on the risk to public health or safety pursuant to Sentencing Guidelines section 5K2.14 from the two levels recommended in the first sentencing to three levels. The department again recommended departing upward by eight levels under Sentencing Guidelines section 5K2.1 because the defendant knowingly risked causing a death.

Before resentencing, the defendant requested an evidentiary hearing to dispute the factual basis for the government's recommended eleven-level upward departure under Sentencing Guidelines sections 5K2.1 and 5K2.14. The district court refused to hold a hearing, but did engage in a colloquy with defense counsel and the prosecutor. Thereafter, the court observed:

> I think the reasoning and the conclusion reached by Mr. Boyle [author of the PSR and Sentencing Recommendation] for the recommendation of 11 points upward departure is well taken, and the court intends at least at this time to adopt the reasoning and conclusions of the probation officer and make them part of the sentencing herein, which I think calls for a 108 month sentence.

The court then adopted the reasoning and conclusions of the PSR. In doing so, at least in regard to the primary disputed issues urged on appeal,[3] the court said, notwithstanding the defendant's denial, it believed a

statement by the defendant's ex-wife who reported their four-year-old son had told her he had seen his father make fireworks in his home. As to the defendant's denial that he caused the death of Agent Massengale, the court rejected his mitigating evidence as "just argument" and told defense counsel that he would take what defense counsel had said as "an offer of proof."

◼ A court's interpretation of the Sentencing Guidelines is reviewed *de novo*. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992). Factual findings are reviewed for clear error. *Id.*

## *THE THREE–LEVEL DEPARTURE UNDER SECTION 5K2.14*

Fed.R.Crim.P. 32(c)(3)(D) requires:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determination shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

◼ The parties agree the district court did not make separate written findings. However, as the government points out, where the district court has received the PSR and the defendant's objections to it, allowed argument to be made and then adopted the PSR, no more is required under Rule 32(c)(3)(D). *See United States v. Rosales*, 917 F.2d 1220, 1222 (9th Cir.1990); *United States v. Rigby*, 896 F.2d 392, 394

---

**2.** At the time of the original sentence, the offense level was set at 19 with a sentencing range of 30–37 months imprisonment. The decrease in Williams' offense level from 19 to 18 resulted from an amendment to the acceptance of responsibility guideline. *See U.S.S.G.* § 3E1.1(b).

**3.** The defendant raised several other factual disputes with the PSR which we need not address here.

(9th Cir.1990). The government's argument though, fails to recognize that in both *Rosales* and *Rigby* "there were no substantial factual disputes." *Rosales*, 917 F.2d at 1222.[4]

█ It is well settled in this circuit that while a district court may adopt the factual findings of the PSR, it may not "adopt conclusory statements unsupported by facts or the Guidelines." *United States v. Navarro*, 979 F.2d 786, 789 (9th Cir.1992). In the present case, the government failed both in its brief and at oral argument to offer any justification for increasing the original recommendation of two levels because of the risk of public safety to three levels in the second recommendation. The second Sentencing Recommendation states "[t]he additional level is recommended following extensive staffing of the case and consideration of the Government's upward departure recommendation pursuant to USSG Section 5K2.14." As the government conceded at oral argument, the probation office learned nothing new between the two reports. When questioned, the government's counsel could not satisfactorily explain what "extensive staffing" took place and how that could be a relevant factor for increased enhancement based on the risk to public safety. The district court's adoption of this conclusion was clearly in error.

█ Regarding the trial court's reasons for adopting the government's recommendation for the enhancement to three levels based upon the risk of public safety, it may be argued the court made it clear it rejected the defendant's denial of making fireworks in his home in the presence of his four-year-old son. The judge did indicate he believed the allegations of defendant's ex-wife. This might be considered an adequate statement of reason to comply with Rule 32(c)(3)(D), but only under circumstances other than those existing here. This court has earlier stated:

> [D]efendant has the right to present fully all available accurate information bearing on mitigation of punishment, and the dis-

trict court has a duty to listen and give careful and serious consideration to such information.

*United States v. Navarro–Flores*, 628 F.2d 1178, 1184 (9th Cir.1980) (citation omitted).

The factual concern is whether the defendant was actually manufacturing the fireworks in his home in the presence of his four-year-old son. It has been recognized that convictions relating to making and storing explosive materials necessarily take into account concern for public safety and the possibility of death. *United States v. Hicks*, 997 F.2d 594, 598 (9th Cir.1993); *United States v. Uca*, 867 F.2d 783, 790 (3d Cir. 1989). Section 5K2.14 authorizes departure only "if national security, public health, or safety was *significantly endangered*." (emphasis added). The district court made no findings to show the degree of risk was substantially in excess of that which the conviction already contemplated. The only suggestion of this is contained in the PSR stating that the fireworks were being made in the presence of his son in defendant's home which was located in a residential area. But of equal importance is the fact the statement the district court relied on is hearsay upon hearsay. It is a statement made by the defendant's ex-wife in which she relates that their four-year-old son told her that he saw his father make fireworks in his father's home.

█ In sentencing, the district court is not restricted in accepting hearsay statements. The Guidelines provide:

> In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a). While under this guideline the court may consider information that would not be admissible at trial, there must be "sufficient indicia of reliability." A sen-

---

**4.** In *Rigby* this court stated "[t]he appellant was given full opportunity to request a more definitive ruling and did not do so. Indeed, he did not challenge the accuracy of any information in the report, only inferences drawn from it." 896 F.2d at 394.

tencing judge may consider hearsay evidence without running afoul of the Confrontation Clause, but the evidence must be reliable. *United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.), *amended,* 992 F.2d 1015 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994). "[A] defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information. Due process requires that some minimal indicia of reliability accompany a hearsay statement." *Id.* (citations omitted).

Although in a completely different context involving a pediatrician's testimony concerning what a child victim of sexual abuse had told him, the Supreme Court in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), addressed this issue and directed courts to evaluate the reliability of hearsay evidence by considering "the totality of circumstances ... that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. at 3149. While it is true that the discussion relating to the confrontation clause set out in *Wright* does not apply to sentencing hearings, *see Petty,* 982 F.2d at 1369, that does not mean that the Court's analysis of how to establish the reliability of a hearsay statement is irrelevant to a sentencing proceeding. In *Wright,* the court declined to establish a "mechanical test" for assessing the reliability of a child declarant's hearsay statement, but did state the factors considered should "relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." [5] 497 U.S. at 822, 110 S.Ct. at 3150.

While not involving sexual abuse of a child, this case does involve the hearsay statement of a very young child. An additional complication is that the child's hearsay statement is reported by his mother's hearsay statement. William's ex-wife did not testify at trial and was not cross-examined. Her statement came to the court in a letter sent to the judge in connection with William's first sentencing.

It seems axiomatic that to assess the reliability of any hearsay statement, a court needs to consider the circumstances in which the statement was made. Neither the PSR, the Sentencing Recommendation, nor the court dealt with any of the circumstances surrounding either the child's or the mother's statements. Even before *Wright,* although again in the context of a trial, in *United States v. Nick,* 604 F.2d 1199, 1204 (9th Cir.1979) (per curiam), we required careful consideration of the circumstances in which the hearsay statement of a child was assessed for reliability.

In the present case, the district court refused to receive into evidence information the defendant had concerning the circumstances surrounding the mother's reporting of the child's statement. The defendant vainly attempted to induce the court to consider a letter from the county juvenile court service officers, who were serving as Guardian ad Litems for defendant's son that states the mother, Ms. Pratt, "[i]s erratic, unstable and inconsistent in her parenting abilities" and that "she would stop at nothing to insure that Michael [the defendant] be erased from any scenario involving their mutual child." [6] De-

---

5. The Court also held that corroborating evidence presented at trial was less useful in supporting a hearsay statement's reliability than it was for determining whether an error in admitting a statement was harmless. *Wright,* 497 U.S. at 823, 110 S.Ct. at 3150–51. It is this aspect of *Wright* that we have rejected as applicable to hearsay evidence received in a sentencing hearing. *Petty,* 982 F.2d at 1369–70.

6. Juvenile Department of Kitsap County responded to Agnes Pratt's letter in the following manner:

Dear Mr. Alvarado:
Your letter of October 6, 1992, requesting that the Juvenile Department provide a response to a letter sent by Agnes Pratt to Judge Tanner in

regard to Michael, his son Willard, and Ms. Pratt, has been received and this is our response.
1. Ms. Pratt is in error, in that, Michael Williams was the custodial parent of Willard from August 7, 1990, until the filing of a dependency petition on May 6, 1992. During this time, Michael was under scrutiny of myself as Court-appointed Guardian ad Litem in a *domestic issue* involving the divorce between he and Agnes Pratt. Ms. Pratt had made numerous allegations about the conduct of Mr. Williams during this time. This officer at no time found evidence of illegal activities in Michael's home. (It should be noted that Agnes Pratt relinquished custody to Mr. Williams on

fense counsel was rebuffed when he asked to call Ms. Pratt to cross-examine her about her son's statement. The only information supporting the son's statement, namely that the defendant had fireworks and materials for making fireworks in his home, does not relate to the particular circumstances in which the statement was made. That information does make it possible that the defendant manufactured fireworks in the presence of his son. But it clearly does not make it more likely than not the defendant did so given that nothing is known about the circumstances surrounding the hearsay statements except what is in the letter by the Guardian ad Litem, and that letter points in the other direction.

Because the court did not offer any reason for accepting the ex-wife's statement of what her son said, the court's wholesale rejection of the defendant's statement that he had never made fireworks in the presence of his son, given the questionable reliability of the government's evidence, appears arbitrary. We find the district court's conclusory adoption of the government's recommendations to have been in error. The three-level enhancement from the Guideline range of 27–33 months is of great significance to the defendant. He should be given an adequate op-

portunity to demonstrate the lack of reliability of the government's proof.[7] Indeed, a central purpose of Fed.R.Crim.P. 32 is to guarantee "a defendant adequate opportunity to challenge the information used against him at the time of sentencing." *United States v. Helmy,* 951 F.2d 988, 998 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992). He was denied that opportunity here.

## THE EIGHT–LEVEL DEPARTURE UNDER SECTION 5K2.1

■ In measuring the district court's compliance with Rule 32 relating to an offense when death occurs, the Guidelines must be considered. Section 5K2.1 reads:

> If death resulted, the court may increase the sentence above the authorized guideline range.
>
> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerous-

August 7, 1990, after having won custodial parent status at a previous court action.)

2. Prior to that, Mr. Williams had difficulty obtaining any visitation rights from Agnes Pratt while she had custody of Willie.

3. This officer and the subsequent Guardian ad Litem in the dependency issue (Patricia R. Harrison) both agree that had not Michael been incarcerated by the federal authorities, he may still be considered for not only regular visitation, but custodial control of Willie. This is due to the fact that we both consider Ms. Pratt as erratic, unstable and inconsistent in her parenting abilities.

4. Finally, as Guardians ad Litem, we both feel that Agnes Pratt has displayed over the course of all these activities, that she would stop at nothing to insure that Michael be erased from any scenario involving their mutual child Willard John Williams.

The rest of what happened to Michael is history. He did, in fact, elect to re-enter the activity of manufacturing fireworks. This has landed him in jeopardy of being incarcerated for a long time. We both feel that this is sad as Michael was the one who was providing a stable, healthy, and ongoing living arrangement for his son. It is our belief that the lure of "quick money" to pay off

legal fees and other debts was what got him into this in the first place. We, as Guardians ad Litem, were aware that he had been involved in illegal activities in the past.

Thank you for your cooperation in all that has gone on in this matter, and we hope that this information is of some use to you when you and Michael appear before Judge Tanner for sentencing.

7. As the commentary to Sentencing Guideline section 6A1.3 states:

> When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues. *See United States v. Fatico,* 603 F.2d 1053, 1057 n. 9 (2d Cir.1979) *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (19[79] ). The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

ness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

The sentencing judge failed to consider the evidence proffered by the defendant in mitigation of his punishment. The court did not receive defendant's proof, it accepted his evidence only as "an offer of proof." The defendant had expert testimony and factual proof that Agent Massengale was negligent in disposing of the chemicals that was certainly relevant to mitigating his punishment.[8]

We are satisfied the district court failed to comply substantially with Fed.R.Crim.P. 32(c)(3)(D) and allow a reviewing court to make certain the basis on which the court resolved any factual disputes.[9] The court wrongfully foreclosed the defendant from establishing evidence in aid of mitigating his punishment. The case is ordered remanded for sentencing.[10]

The case is remanded to the Chief Judge of the District Court of the Western District of Washington for reassignment to another district judge for purposes of resentencing of the defendant.

The sentence of the district court is vacated and the case is remanded for resentencing.

VACATED and REMANDED.

8. The defendant also argues the PSR and increased sentence recommendation was vindictive and unconstitutional. We need not pass on these claims because of our conclusion that the court did not consider evidence relevant to defendant's sentencing.

9. As the House Judiciary Committee notes make clear, "the first sentence of new subdivision (c)(3)(D) is intended to ensure that a record is made as to exactly what resolution occurred as to controverted matter."

10. Defendant should at that time be given an opportunity to dispute all factual matters within the PSR with which he takes issue.