72 F.3d 135
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Derrick Ron ASHLEY, Defendant-Appellant.
 No. 94-50489.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 17, 1995.[1]
Decided Dec. 7, 1995.
 
 1
 Before: POOLE and O'SCANNLAIN, Circuit Judges, and MARQUEZ,[2] District Judge.
 
 MEMORANDUM[3]
 BACKGROUND
 
 2
 The government charged Defendant/Appellant Ashley in a three-count indictment with narcotics trafficking: Count One--conspiracy to possess with intent to distribute and distribution of cocaine base; Count Two--aiding and abetting possession with intent to distribute 72.8 grams of cocaine base; Count Three--aiding and abetting in the intentional distribution of 72.8 grams of cocaine base. A jury convicted Appellant on all three counts, and the district court sentenced him to 135 months imprisonment and to five years supervised release. Ashley timely appeals his conviction and sentence.
 
 
 3
 Ashley contends the evidence was insufficient to support his conviction. In the event his conviction stands, Ashley submits the trial court erred by not granting a downward departure for "sentencing entrapment."
 
 
 4
 The trial court's challenged decisions were based on the following record:[4]
 
 
 5
 Special Agent Constance Beachem (S.A. Beachem) testified at trial that on April 29, 1993, in her capacity as an undercover agent, she met Defendant. (RT 3/22/94:63; ER at 13.) At the meeting, she was seated in the back seat of a car and Ashley stood outside the car, leaning his head through the open car window, (RT 3/22/94:66; ER at 16.); he did most of the talking, (RT 3/22/94:66-67; ER at 16-17.) She focused her attention on Ashley, who was within approximately one-half foot of her, during the meeting which lasted approximately 15 minutes. (RT 3/22/94:66-67; ER at 16-17.)
 
 
 6
 On May 12, 1993, S.A. Beachem paged Ashley; he responded by calling her at approximately 5:09 P.M. (RT 3/22/94:64-65; ER at 14-15.) S.A. Beachem set up a drug deal with Ashley. (RT 3/22/94:63-64; ER at 13-14.) The conversation was tape recorded. (Government's Trial Exhibit 2; ER at 89(a).) S.A. Beachem testified that she recognized Defendant Ashley's voice when he returned her page; that he identified himself as "Rick," (RT 3/22/94:103-104; ER at 53-54; ER at 89(b)), and confirmed that a third party had spoken to him about her. (ER at 89(b).) During this conversation, Ashley agreed to provide one ounce of crack cocaine for $750. (3/22/94:71; ER at 21.)
 
 
 7
 One hour later, at 6:45 P.M., S.A. Beachem and Ashley spoke again by phone. (RT 3/22/94:71; ER at 21.) Again, S.A. Beachem taped the conversation. (Government's Trial Exhibit 3; SER at 1.) S.A. Beachem asked to purchase three ounces[5] of crack cocaine, instead of one. (SER at 2-3; RT 3/22/94:74-75; ER at 24-25.) Ashley agreed to make the sale and instructed Beachem to meet him in front of Christy's donut shop. (SER at 2-3; RT 3/22/94:74-75; ER at 24-25.)
 
 
 8
 S.A. Beachem went to Christy's. There an unknown male approached the driver's side of her car, he said he had been sent by "Rick" to "do business." (RT 3/22/94:76; ER at 26.) He provided S.A. Beachem with the three ounces of crack for which she paid him $2,250,[6] exactly three times Ashley's asking price of $750 per ounce. (RT 3/22/94:77; ER at 27.) Beachem asked the man if he knew the price of a kilogram of cocaine, but he wasn't sure and told her to check with "Rick." (RT 3/22/94:77; ER at 27.)
 
 
 9
 Officer Carl Steel testified that he conducted surveillance during the drug deal. (RT 3/22/94:111-12; ER at 61-62.) He saw Ashley come out of an apartment complex across the street from Christy's and watch the drug transaction between the unknown male and S.A. Beachem. (RT 3/22/94:113; ER at 63.) Afterwards, the unknown male walked over to where Ashley was waiting and the two had a conversation. (RT 3/22/94:116; ER at 66.) Steel then saw both walk into the apartment complex together. (RT 3/22/94:116; ER at 66.) Steel saw all of this from within 50 to 60 feet of Ashley. (RT 3/22/94:115; ER at 65.)
 
 
 10
 Another officer, Clifford Ruona, also conducted surveillance. Ruona obtained the license number from a vehicle parked about one-quarter to one-half of a block from where the drug transaction took place. (RT 3/22/94:125; ER at 75.) The vehicle was registered to Ashley. (RT 3/22/94:126; ER at 76.)
 
 
 11
 Again, on June 10, 1993, S.A. Beachem had another taped conversation with Ashley. (Government's Trial Exhibit 4; SER at 5; RT 3/22/94:80-81; ER at 30-31.) Beachem asked about additional drug purchases and Ashley told her that the price for a kilogram of cocaine was between $18,000 and $20,000, but he had to check the exact price for that day and he would get back to her. (Government's Trial Exhibit 4; SER at 7; RT 3/22/94:82-83; ER at 32-33.) S.A. Beachem made no further purchases from Ashley.
 
 DISCUSSION: LEGAL ANALYSIS
 
 12
 1. Sufficiency of the Evidence Supporting Appellant Ashley's
 
 
 13
 Conviction for Conspiring to Distribute Cocaine
 
 Base and Aiding and Abetting the
 Possession and Distribution of
 
 14
 Cocaine Base.
 
 
 15
 The standard of review for a claim that evidence is insufficient to support a conviction is highly deferential. United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir.1992) (en banc ); United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990). "This court will affirm if " 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1453 (9th Cir.) (quoting Jackson v. Virginia, 443 U.S. 307, 319, rehearing denied, 444 U.S. 890 (1979) (emphasis in original)), cert. denied, 478 U.S. 1007 (1986). When evaluating trial evidence, the court of appeals must draw all reasonable inferences favorable to the Government. United States v. Arriaga-Segura, 743 F.2d 1434, 1435 (9th Cir.1984).
 
 
 16
 Ashley challenges S.A. Beachem's telephonic voice identification and argues that apart from the evidence in the recorded telephone conversations, his conduct at the scene of the May 12 drug deal does not establish knowing participation in drug trafficking. Ashley charges that S.A. Beachem had insufficient opportunity to know his voice and that the 5:00 P.M., May 12 taped conversation is inconsistent with S.A. Beachem's testimony that the caller returning her page was the man she had previously met on April 29, because the recording shows that he did not recognize her identity during the first few moments of the exchange.
 
 
 17
 Countering Ashley's arguments, the substance of the May 12 telephone conversation confirms that the person speaking on the telephone was Ashley. The caller identified himself as "Rick," the name S.A. Beachem used when addressing or referring to the Appellant. He recognized the name "Connie" which he had been told by "G" or "Brother" was S.A. Beachem's name, and that she would be paging him to negotiate a drug transaction. Ashley's identity as the man on the telephone was corroborated when he appeared across the street at a vantage point to observe the drug deal.
 
 
 18
 Questions of credibility are for the jury to decide and are generally immune from appellate review, United States v. Gordon, 844 F.2d 1397, 1405 (9th Cir.1988), and there is a presumption that the jury believed S.A. Beachem's testimony, Jackson, 443 U.S. at 326, that she recognized the voice of the man in the various telephone conversations to be that of Ashley. This court reviews the record as a whole when considering the sufficiency of the evidence. United States v. Peters, 962 F.2d 1410, 1414 (9th Cir.1992); Jackson v. Virginia, 443 U.S. at 319. Ashley's conduct at the scene of the May 12 transaction cannot stand alone and, in combination with the other evidence of Ashley's involvement, his challenge fails.
 
 
 19
 2. The District Court Exercised Its Discretion not to Depart
 
 Downward for Sentencing Entrapment
 
 20
 "Sentencing entrapment or 'sentence factor manipulation' occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.' " United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir.1994). The doctrine operates to prevent government agents from unfairly pressuring defendants to increase the amount of drugs in a sting operation so that sentencing guidelines can be maximized without regard for the defendant's criminal predisposition, his capacity to commit the crime on his own, and the extent of his culpability. Id. at 1107.
 
 
 21
 The district court rejected the doctrine for purposes of sentencing Ashley finding that:
 
 
 22
 To the extent that the doctrine of sentencing entrapment is viable at all in the Ninth Circuit--I have my doubts about that--it requires outrageous government conduct.
 
 
 23
 (ER at 179.) The district court's comments reflected the status of the law existing at the time of sentencing, August 22, 1994. The doctrine, addressed only in dicta, was described as:
 
 
 24
 ... [a] novel defense .. [requiring] a defendant to show that the government engaged in outrageous official conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs and the resulting sentence of the entrapped defendant. See United States v. Barth, 990 F.2d 422, 424 (8th Cir.1993).
 
 
 25
 United States v. Davis, 15 F.3d 902, 910 (9th Cir.), superseded on rehearing, 36 F.3d 1424 (1994) (no substantive change to pertinent section cited here), cert. denied, Williams v. United States, 115 S.Ct. 1147 (1995).
 
 
 26
 At the sentencing hearing, Ashley's defense counsel focused the argument on the conduct of the government:
 
 
 27
 What Mr. Ashley is arguing is this whole idea of manipulation of the amount to increase the sentence. Whether or not there was a predisposition or other factors, I think the issue really is focusing on the agent's conduct in this case--where, again, the government does not dispute, there was an agreement for one ounce, and the agent on her own said three ounces. And I think the court should take that into consideration in a downward departure.
 
 
 28
 (RT 8/22/94:9; ER at 179 (emphasis added).)
 
 
 29
 Since Ashley's sentencing, the Ninth Circuit has explicitly adopted the doctrine of sentencing entrapment or manipulation. In United States v. Staufer, 38 F.3d 1103, the Circuit decided that under the Guidelines, sentencing entrapment may be relied on as a basis for a downward departure. In Staufer, the analysis emphasizes the predisposition of the defendant to sell the amount of drugs sold in the challenged transaction.
 
 
 30
 Most recently, the Ninth Circuit has applied an analysis similar to that performed for purposes of U.S.S.G. Sec. 2D1.1 for determining the negotiated amount of drugs under Application Note 12 and for quantity calculations in reverse sting operations under Application Note 17. United States v. Naranjo, 52 F.3d 245, 250 (9th Cir.1995). "Under Note 12, the district court 'shall exclude' from the calculation the amount of drugs which flow from sentencing entrapment[ ] [;] ... under Note 17, a downward departure is warranted when sentencing entrapment occurs." Id.
 
 
 31
 In Naranjo, government agents increased the quantity of drugs which they were trying to sell to a point where the defendant had great difficulty in consummating the deal. In Naranjo, the defendant had the burden of demonstrating that "he had neither the intent nor the resources for completing [the] transaction," Id. The district court must make factual findings on the critical issue of defendant's predisposition to engage in the charged transaction, Id. at 251: such as his capacity to commit the crime on his own, and the extent of his culpability. Staufer, 38 F.3d at 1107.
 
 
 32
 Here, Ashley's defense counsel argued that the district court should depart downward because the government established the amount of drugs in its sting operation by asking Ashley to supply three ounces instead of one ounce of crack cocaine. Defense counsel addressed Ashley's predisposition to make the sale by arguing that after the May 12 sale of the three ounces of cocaine, S.A. Beachem attempted to buy a kilogram of cocaine and "nothing happened." (RT 8/22/94:6; ER at 176.) The government responded that there was only one post-May 12 conversation between Ashley and S.A. Beachem and that nothing during that conversation "indicate[d] any hesitancy on the part of the Defendant to transact another deal." (RT 8/22/94:8; ER at 178.)
 
 
 33
 The district court reviewed both the record of the post-May 12, 1993, conversation, (Government's Trial Exhibit 14), and the trial evidence of Ashley's willingness to go along with S.A. Beachem's requested amounts of cocaine. The district court opined, "it's not the government's burden to pick the precise amount and to pick the lowest amount...., [defendant] could just say no. And he never said no[ ]" and concluded, "So as a matter of discretion, I refuse to depart downward on the basis of sentencing entrapment." (RT 8/22/94:10; ER at 180.) Because the district court did not err in its interpretation of the law, its discretionary denial of a downward departure is not reviewable. United States v. Pinto, 48 F.3d 384, 388 (9th Cir.1995).
 
 CONCLUSION
 
 34
 The judgment of conviction and sentence are AFFIRMED.
 
 
 
 [1]
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 [2]
 Honorable Alfredo C. Marquez, Senior U.S. District Judge for the District of Arizona, sitting by designation
 
 
 [3]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [4]
 Record of Transcript (RT); Excerpt of Record (ER); Supplemental or Government Excerpts (SER)
 
 
 [5]
 72.8 grams
 
 
 [6]
 Beachem actually paid $2,260 for the three grams because she did not have a $10 bill and the man said he was not in a position to lower the price