86 F.3d 1165
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Octavio Reyes VILLEGAS, Defendant-Appellee.
 No. 95-50410.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1996.
Decided May 31, 1996.
 
 Before: HALL, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States appeals the 12-month sentence of Octavio Reyes Villegas, who was convicted of one count of conspiracy to sell counterfeit currency in violation of 18 U.S.C. § 922(g)(1). The district court granted Villegas a downward departure from the Sentencing Guidelines apparently on the basis either that Villegas was the victim of sentencing entrapment, or that he was subjected to sentencing manipulation by the investigating authorities. We vacate and remand for resentencing.[1]
 
 
 3
 The only theory presented for review is sentencing entrapment. Counsel for Villegas stated at oral argument that the only issue on appeal was sentencing entrapment, and that she was not arguing sentencing manipulation. Assuming arguendo that sentencing entrapment was relied upon by the district court--this is not entirely clear--we find no evidence to support the downward departure.
 
 
 4
 "Sentencing entrapment ... occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.' " United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir.1994) (citing United States v. Stuart, 923 F.2d 607, 614 (8th Cir.), cert. denied, 499 U.S. 967 (1991)). Staufer establishes that sentencing entrapment may be relied upon as a basis for downward departure under the Sentencing Guidelines. 38 F.3d at 1108. It is the defendant's "burden of proof to demonstrate that he had neither the intent nor the resources" to complete a transaction of the given magnitude. United States v. Naranjo, 52 F.3d 245, 250 (9th Cir.1995) (citing United States v. Steward, 16 F.3d 317, 321-22 (9th Cir.1994)).
 
 
 5
 Thus Villegas had the burden to show he lacked the disposition to engage in a million dollar transaction. He argues that the third transaction amounted to entrapment because he was pestered by the informant into selling the large amount of counterfeit currency, and because he had never dealt in so large an amount in the past. However, the record presents strong evidence against his position.
 
 
 6
 First, even before the government became involved directly in this operation, Villegas offered to sell "any" amount of counterfeit currency to the informant. Then, at Villegas' apartment, the informant saw stacks of counterfeit $20 notes on a table, indicating Villegas had more to sell.
 
 
 7
 Villegas renewed his open-ended offer to Agent Puentes when they met to conduct the second deal, saying that with two weeks notice he could obtain any amount of money. It appears he was eager to do further business with Agent Puentes and the informant. He offered to obtain for them a favorable price from the printer.
 
 
 8
 Next, there is no indication that Villegas was pressured in any way to engage in the damning third transaction. Villegas agreed to supply $950,000 in counterfeit $20 notes. His conduct suggests that he was happy to sell such a large sum of counterfeit money. Villegas fronted $2,400 of the advance payment himself. The district court suggested that he was only able to make this payment because the government had paid him money in the initial transaction. This conclusion appears erroneous, however, because Villegas admits he was only paid $150 for the first two transactions combined. Moreover, Villegas stood to gain $10,000 in payment from the printer for facilitating the large transaction. This financial incentive provides a motive for Villegas to make the leap in currency amounts that he did.
 
 
 9
 Finally, even after Villegas had an agreement from Agent Puentes to purchase $950,000, he freely proposed an additional sale of his new $100 notes. Thus, Villegas was hardly experiencing vertigo as the million dollar mark approached.
 
 
 10
 The district court suggested that no private market existed for so large a transaction. It is not clear that "an independent private market" is relevant under the doctrine of sentencing entrapment, which refers to a defendant's lack of "resources." Naranjo, 52 F.3d at 250. However, even accepting for sake of argument that the existence of an extra-governmental market is required, Villegas' position lacks merit. First, it was Villegas' burden, not the government's, to show he would have been unable to engage in such a transaction in the absence of police involvement. He presented no evidence on this point. Second, even if true, it is not clear that this one factor would outweigh the other evidence tending to show Villegas' willingness to engage in as large a transaction as he could find.
 
 
 11
 The record being devoid of evidence to support a downward departure based on sentencing entrapment, the sentence imposed by the district court is vacated and the cause is remanded for resentencing in a manner consistent with this opinion.
 
 
 12
 VACATED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This appeal is not rendered moot by Villegas' deportation because the government may proceed further against Villegas should he reenter the country, particularly if he reenters illegally. United States v. Valdez-Gonzalez, 957 F.2d 643, 646-47 (9th Cir.1992)