**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Brigitte RIEDL, Defendant—Appellant.**

Nos. 01–10713, 01–10716.
D.C. No. CR 98–00624–ACK.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Decided Nov. 20, 2003.

Thomas C. Muehleck, Asst. U.S. Atty., Rachel S. Moriyama, Asst. U.S. Atty., AUS–United States Attorneys Office, Honolulu, HI, for Plaintiff–Appellee.

William W. Stewart, William, Stewart & Associates, Newport Beach, CA, for Defendant–Appellant.

Before REINHARDT, THOMAS, and CLIFTON Circuit Judges.

### MEMORANDUM *

Brigitte Riedl appeals an order of the district court denying her motion to set aside a forfeiture of nine real properties Riedl sold for money, described to her as "drug money" by undercover agents, in a sting operation. We AFFIRM.

On September 30, 1998, the United States obtained an indictment from a federal grand jury charging Riedl, along with two co-defendants, with several counts of money laundering and several drug-related offenses. The indictment also sought the forfeiture of nine real properties Riedl sold to undercover agents as part of an alleged money laundering scheme. Riedl had first agreed to sell just one of her properties to an undercover agent posing as a prostitute and drug dealer; thereafter, Riedl negotiated the sale of all nine properties to several undercover agents in a package deal for a total price of $2.6 million.

A jury found Riedl guilty of five counts of money laundering and four counts of offenses related to the distribution of cocaine. The jury also found that the nine properties listed in the indictment were subject to forfeiture under 18 U.S.C. § 982(a)(1). Riedl filed a motion to set aside forfeiture under the Excessive Fines Clause of the Eighth Amendment; she also claimed that the government committed sentencing entrapment and sentencing manipulation.

The district court denied Riedl's claims that the government had engaged in sentencing entrapment and sentencing manipulation. The court also denied the motion to set aside forfeiture but agreed to reconsider the issue at sentencing. At sentencing, the district court granted Riedl a three-level downward departure for mental incapacity and sentenced her to 66 months of imprisonment. Applying *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), and *United States v. 3814 NW Thurman St.*, 164 F.3d 1191 (9th Cir.1999), the district court concluded that "the forfeiture at issue is not grossly disproportionate to the gravity of the offense."

■ **1. Excessive Fines Clause.** The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed...." U.S. CONST. amend. VIII. A forfeiture is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334; *see also id.* at 336–37.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

The district court appropriately estimated the value of the properties subject to forfeiture to be somewhere between $1,193,521 and $1,374,300. That range constitutes a reasonable approximation of the properties' fair market value, as reflected by 1999 tax assessments, after subtracting the properties' various encumbrances and liens. Riedl's contention that the property should be valued at the agreed upon sale price is unpersuasive. Riedl admitted that the undercover agents had offered her a price far over market value; she knew that they could afford the deal only because they were using surplus cash from drug transactions.

Given the value of the property forfeited, the district court reasonably found that the fine was not grossly disproportional under the four *Thurman St.* factors. 164 F.3d at 1197–99. Those factors include, first, whether the violation was related to other illegal activities; second, whether the forfeiture was comparable to other penalties applicable to the offense; third, the severity of the harm caused by the defendant's conduct; and fourth, the relationship between the gravity of the offense and the amount of the forfeiture. *Id.*

First, Riedl's conversion of proceeds from drug transactions into several cashier's checks for deposit in an escrow account linked her illegal conduct to the prevalence of drug dealing and prostitution occurring in and around her properties. Second, the value of the property forfeited was roughly equivalent to other penalties authorized by federal law. *See Bajakajian*, 524 U.S. at 338 n.14. The maximum statutory penalty for each felony count under 18 U.S.C. §§ 1956 and 3571 was $250,000; Riedl's conviction for five counts means her maximum statutory penalty, $1,250,000, fell within the range forfeited. Riedl's maximum exposure under the Federal Sentencing Guidelines, given that the

district court properly set her offense level at 24, was $100,000, *see* U.S.S.G. § 5E1.2 (c)(4), approximately 12 to 13 times smaller than the size of the forfeiture. Still, unlike the relatively small criminal penalties imposed in *Bajakajian* or in *Thurman St.*, the district court sentenced Riedl to 66 months in prison. When the "full criminal penalty" is considered, *see United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003), it is apparent that Riedl's culpability is significantly greater than that of Bajakajian, where the maximum penalty "confirm[ed] a minimal level of culpability." *Bajakajian*, 524 U.S. at 339. Third, the district court reasonably determined that the level of harm Riedl's actions caused was not insignificant. Fourth, weighing the gravity of the offense against the size of the forfeiture, the district court reasonably concluded that the fine was not "grossly excessive." Riedl was well aware of the source of the money being used to purchase her property; she encouraged the undercover officers to convert their illegal proceeds into safe and stable sources of value. Moreover, Riedl actively planned and helped structure the money laundering transactions. The forfeiture therefore was not grossly disproportional to Riedl's offense.

■ **2. Sentencing Manipulation and Entrapment.** The district court did not err in finding Riedl predisposed to launder money; nor did it err in determining that the government did not deliberately prolong the investigation in order to increase the penalty. *See United States v. Staufer*, 38 F.3d 1103, 1109 (9th Cir.1994). It was Riedl who initiated most of the early discussions with the undercover officers about the sale of her properties; she repeatedly encouraged the officers to purchase real property from her to enhance their financial security, and she expressed no concern when told (numerous times) that the source of the money to be used for the

purchases was "drug money." Nor did Riedl show undisputed evidence that the government convinced her to sell all nine of her properties solely for the purpose of increasing her sentencing exposure. Although the record is unclear about whether Riedl or the undercover agents first mentioned the sale of all Riedl's properties in a "package deal," the record is crystal clear that both parties happily and actively pursued the package deal once it was on the table. This is not a case in which undercover government agents actively manipulated a defendant into accepting a deal she did not want to accept. *But see United States v. Naranjo*, 52 F.3d 245, 250 (9th Cir.1995). The district court thus properly found that Riedl was sufficiently involved and culpable to negate a charge of sentencing entrapment or manipulation.

The district court's decision is therefore **AFFIRMED.**